IRENE HERITIER, PLAINTIFF-RESPONDENT, v. THE CENTURY INDEMNITY COMPANY, DEFENDANT-APPELLANT.

Argued May 23, 1932—Decided October 17, 1932.

For the defendant-appellant, *Arthur T. Vanderbilt.*

For the plaintiff-respondent, *Harrison & Roche* (*Auguste Roche, Jr.,* of counsel).

The opinion of the court was delivered by

BODINE, J. The plaintiff in this action obtained a judgment against Paul Marrone, and after execution was returned unsatisfied brought the present suit against the defendant, who had issued a policy of indemnity insurance in favor of Marrone. In the body of the policy, Marrone's business was described as that of undertaker. "Renting or livery" is excluded from the terms of the policy. An endorsement upon the policy provides that the automobile covered shall be used as a funeral car. Another endorsement provides that the car shall be used by the named assured only for purposes incidental to the assured's business of funeral director, and that the policy shall not apply if any such automobile be equipped with a taximeter or operated for hire at stands, hotels, stations, &c., or used in short hauls or trip work at standard fares. It appears to be uncontroverted that at the time of the plaintiff's injuries the car was being used for a wedding party, which the defendant claims was not within the terms of the policy.

Judge Dungan, in the Essex Circuit, denied a motion to strike the answer raising the issue of coverage under the policy and placed the case upon the trial calendar, presumably to the end that proof might be offered to establish the fact as to whether or not the car was being used in such manner as to bring it within the terms of the policy.

The trial judge took judicial notice that a car being used to convey a wedding party was used for purposes incidental to the business of a funeral director, and precluded the defendant from showing, by proof, that the policy did not cover the car when used for purposes other than funerals and certainly did not cover the car when used for short hauls

or trip work at standard fares or wedding parties, and directed a verdict for the plaintiff.

The law of the case as between the parties was settled by Judge Dungan's ruling. *Commercial Union of America* v. *Anglo-American Bank,* 10 *Fed. Rep.* (2d) 937. But that circumstance did not control the final disposition of the case by the trial judge, whose rulings are brought here for review. *Lundin* v. *Post Publishing Co.,* 217 *Mass.* 213.

Appellant brings to our attention the following alleged errors: "That the lower court erred (1) in taking judicial notice that funeral directors customarily rent out their automobiles for wedding parties; (2) in ruling that the policy covered the automobile while rented out for a wedding party; (3) in directing a verdict for plaintiff, and (4) in refusing to direct a verdict for defendant."

"No doubt, where the sense of the words and expressions used in a policy is either ambiguous or obscure on the face of the instrument, or is made so by proof of extrinsic circumstances, parol evidence is admissible to explain by usage their meaning in the given case. No doubt, too, every usage of a particular trade, which is so well settled or so generally known that all persons engaged in that trade may be fairly considered as contracting with reference to it, is considered to form part of every policy, designed to protect risks in such trade, unless the express terms of the policy decisively repel the inference. But the usage, in order to be binding, must be either a general usage of the whole mercantile world, or a particular usage of universal notoriety in the trade upon which, and of the place at which, the insurance is effected; the usage of a particular place, or of a particular class of persons, cannot be binding on non-residents, or on other persons, unless they are shown to have been cognizant of it or the usage is shown to have existed under such circumstances, or for such a length of time, as to have become generally well known to all persons concerned in or about the branch of trade to which it relates, and so as to warrant a presumption that contracts are made with reference to it." *Cramer & King Co.* v. *National Surety Co.,* 103 *N. J. L.* 83, 85.

We do not regard the terms of the policy as either ambiguous or obscure; nor was there any proof that there was a custom among funeral directors to lease cars for weddings; nor does it appear by proof that there was a general usage or particular usage of universal notoriety of which the defendant must have been cognizant.

The problem is, what are the purposes incidental to the assured's business of funeral director? Complainant sought to show that the transporting of wedding parties was such. Failing so to do, the court took judicial notice of the matter. The word "incidental" is generally well understood and is defined in Webster's New Collegiate Dictionary as follows: "Happening as a chance or undesigned feature of something else; casual; subordinate. Liable to happen or to follow as a chance feature or incident." It does not seem to us that it can be said that transportation of wedding guests for hire is a chance or undesigned feature of burying the dead; nor is such transportation of a wedding party likely to happen or to follow as a chance feature or incident of funerals. Granted that many funeral directors may rent cars for wedding parties, it does not seem to us to be an incidental part of the funeral business. The incidents connected with burying the dead can hardly be said to be the conduct of a car livery business. That the two occupations may be followed by the same person does not make one the incident of the other, but merely suggests the co-ordination of two sorts of activities.

In small towns the same merchant frequently sells coal and ice, but the selling of ice is hardly incidental to the conduct of the coal business. Funeral directors were at one time better known as undertakers. When they made their own coffins they often used their spare time in making beds and furniture. Could it be said that the manufacture of beds was incidental to the burial of the dead? Further, the proofs show that the car was rented for a specific purpose, for a fixed price, and was making a short trip to convey a wedding party when the accident occurred. Such use we do not think can be said to be a use incidental to the assured's

business of burying the dead, unless we give to the word "incidental" a meaning not yet accorded to it.

The judgment below is reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.