SAMUEL E. POOLE v. THE TRAVELERS INSURANCE COMPANY, a foreign corporation, and THE TRAVELERS INDEMNITY COMPANY, a foreign corporation.

179 So. 138.

Opinion Filed December 16, 1937.

Rehearing Denied February 4, 1938.

*Hilburn & Merryday,* for Plaintiff in Error;

. *Marks, Marks, Holt, Gray & Yates,* for Defendant in Error.

PER CURIAM.—Samuel E. Poole sued the Gem City Builders' Supply Company for damages for personal injuries received and for expenses consequent thereon, as a result of the careless and negligent manner in which the Gem City Builders' Supply Company, through its employee, operated one of its trucks. Plaintiff recovered judgment in the amount of $5,500.00, together with his costs.

Thereafter, S. J. Hilburn, attorney for Samuel E. Poole, made affidavit that plaintiff held a judgment in the amount of $5,500.00 and costs against the Gem City Builders' Supply Company; that affiant does not believe the defendant has in its possession visible property upon which a levy can be made sufficient to satisfy said judgment; that the Travelers Insurance Company and the Travelers Indemnity Company are indebted to the Gem City Builders Supply Company, or have its effects or property in their hands, custody or control; and prayed that a writ of garnishment issue to the Travelers Insurance Company and the Travelers Indemnity Company commanding them to appear and answer this affidavit.

The writ of garnishment was issued.

The Travelers Insurance Company and the Travelers Indemnity Company each filed separate answers to the affida-

vit. Each answer averred "that at the time of the service of the writ of garnishment upon this corporation in the above entitled action and garnishment proceeding, this corporation was not indebted to the defendant, Gem City Builders' Supply Company, a corporation, nor is it indebted to the said Gem City Builders' Supply Company, a corporation, at the time of the filing of this answer, nor was it indebted to the said Gem City Builders' Supply Company, a corporation, at any time between said periods." Each answer further averred that said answering garnishee did not have in its hands, possession or control at any of said times any goods, money, chattels or effects of said defendant; that said answering garnishee does not know of any other person indebted to said defendant, nor does it know of any other person who may have any of the effects of said defendant in his hands.

Plaintiff filed a traverse to each answer, directly traversing and denying the truth of that part of each answer quoted above, and then averring that said garnishee was indebted to the said Gem City Builders' Supply Company at the time said writ of garnishment was served on said garnishee, and is still indebted to said defendant, as set forth in the affidavit of plaintiff's attorney.

The attorneys of record for both parties stipulated that the cause be tried before Hon. George William Jackson, Circuit Judge for the Seventh Judicial Circuit, without the intervention of a jury, either in term time or in vacation, upon such date as the court may name; that the findings of the judge on issues of fact shall have the same force and effect as the verdict of a jury; and that at the convenience of the court a formal order be entered carrying the stipulation into effect. No such order appears in the record.

After hearing the evidence, the court entered final judg-

ment in the cause, finding the issues of fact in favor of the garnishees, severally, and thereupon entered judgment in favor of the garnishees, and awarded the garnishees their costs.

Motion for new trial was denied.

From the final judgment plaintiff took writ of error.

The material facts of the case are not disputed but are admitted by the respective parties. The truck involved in the accident was not described in the policy of insurance because it was not owned by the Gem City Builders' Supply Company at the time the policy of insurance was issued; but it was later purchased and allowed to be substituted for one of the insured trucks, and is treated by both parties as being covered by the poilcy of insurance, and a stipulation to that effect was entered upon the record. Attached to the truck in question was a two-wheel semi-trailer. The truck and the semi-trailer had hauled a load of lumber from Palatka to Elkton, Florida, had unloaded the lumber at Elkton, was returning empty and had reached East Palatka on the return trip when the accident occurred. The truck was insured and the semi-trailer was not.

The sole question to be determined is one of law, and is whether either or both of the garnishee insurance companies is or are liable on the policy of insurance because of the fact that at the time of the accident, the truck which was insured, was towing a *semi-trailer,* which was not insured?

The policy of insurance contained the following pertinent provisions:

"The insurance afforded is only in respect to such and so many of the following Coverages as are indicated by a specific premium charge or charges. The limit of the Company's liability against each of such Coverages shall be as

stated herein, subject to all of the terms of the Policy having reference thereto." * * *

| "Item 4 Coverages | Limit of Liability | Premiums |
|---|---|---|
| A. Bodily injury Liability | $10,000 each person and subject to that limit for each person $20,000.00 each accident | $62.10" |

"Item 5. The purposes for which the automobile is to be used are Commercial. (Refer to Condition B for definitions of Purposes of use)." * * *

"1. Coverage A—Bodily Injury Liability.

To pay on behalf of the Assured all sums which the Assured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury, including death at any time resulting therefrom, accidentally sustained by any person or persons and caused by the ownership, maintenance or use of the automobile." * * *

"A. AUTOMOBILE DEFINED—TWO OR MORE AUTOMOBILES Wherever in this Policy the word 'automobile' is used, it shall be held to mean any type of motor vehicle or trailer as described herein; and when two or more automobiles are insured hereunder, the terms of this Policy apply separately to each.

"B. PURPOSES OF USE DEFINED (a) The term 'Pleasure and Business' is defined as personal, pleasure and family use including business calls.

"(b) The term 'Commercial' is defined as the transportation or delivery and the loading and unloading of goods or merchandise in direct connection with the Assured's business

occupation as expressed in Item 1. (c) The purposes of use as defined in (a) and (b) foregoing shall exclude the renting or livery use of the automobile and the carrying of passengers for a consideration. (d) The automobile shall be insured for renting, livery, carrying passengers for a consideration, the business of demonstrating or testing, or the towing of any trailer, only when such uses are definitely declared and rated. (e) Coverage for any trailer covered herein shall apply only while such trailer is being used in connection with any automobile insured by the Company."
* * *

"N. CHANGES. The terms of this Policy shall not be waived or changed except by endorsement attached hereto, signed by the President, a Vice-President, Secretary, Assistant Secretary of the Company, the Superintendent of its Automobile Division, or a Registrar specially authorized; nor shall notice to any agent, or knowledge possessed by any agent or by any other person, be held to effect a waiver or change in any part of this Policy; provided, however, that changes may be made in the written portion of the Declarations by a Manager or General Agent of the Company, such changes to bind the Company and the Assured when initialed by such Manager or General Agent. The personal pronoun herein used to refer to the Assured shall apply regardless of number or gender." * * *

| "Town and State in which the Automobile will be principally garaged and used. | Trade Name of the Automobile | Factory or Serial No. | Year of Model |
|---|---|---|---|
| "Palatka, Putnam County, Florida. | International | 1653 M279789 | 1933 |
| | Ford | 5162181 | 1933 |
| | Ford | 2563824 | 1929 |

| "Type of Body and Model (Advertised Load Capacity of Commercial; Designated Seating Capacity, if Bus) | Purpose of Use | Bodily injury Liability | PREMIUMS<br>Property Damage Liability |
|---|---|---|---|
| "1½ ton Truck Model B-2 | Comm. | 20.70 | 11.00 |
| 1½ ton Truck Model AA | Comm. | 20.70 | 11.00 |
| 1½ ton Truck Model AA | Comm. | 20.70 | 11.00 |

Thus the terms of the policy of insurance state that the truck in question was to be used for "commercial" purposes. Under the definition of "commercial purposes," the policy provided that the truck in question shall be insured for the towing of any trailer only when such use is definitely declared and rated. The exception made no reference to the use of any *semi-trailer*.

Section 1280 (1006) C. G. L. defines the terms *trailer* and *semi-trailer* as follows:

" 'Trailer' as defined in this Chapter shall include all four wheel vehicles coupled to or drawn by a motor vehicle.

" 'Semi-trailer' as defined in this Chapter shall include any two wheel vehicle coupled to or drawn by any motor vehicle."

This statute was a part of the contract of insurance because it was in force at the time the parties entered into the contract of insurance. The policy requires that *trailers* but not *semi-trailers* be definitely declared and rated in order for the truck towing the same to be insured for liability to others resulting from any accident, covered by the terms of the policy, occurring while the truck was towing such trailer.

The Insurance Manual introduced in evidence also rec-' ognized the distinction between *trailer* and *semi-trailer* by defining them as follows:

"A trailer is a vehicle not equipped with automotive power, constructed for attachment to. an automobile or tractor to supplement the carrying or load capacity of such automobile or tractor. A Semi-Trailer is a trailer (usually of the two-wheeled type) attached to a tractor or a truck without body by means of a king pin or fifth wheel."

From the definitions of the term *semi-trailer* contained in the Insurance Manual quoted from and in the statute, Section 1280 (1006) C. G. L., it is definitely certain that the vehicle attached to the truck in question at the time of the accident was a semi-trailer. The terms of the policy did not require a *semi-trailer* to be definitely declared and rated in order for the truck towing it to be insured against the liabilities stated in the policy.

Where the terms of an insurance policy will bear two interpretations, that one will be adopted which sustains the claim for indemnity. Queen Insurance Co. v. Patterson Drug Co., 73' Fla. 665, 74 So. 807, L. R. A. 1917D 1091; National Surety Co. v. Williams, 74 Fla. 446, 77 So 212; Elliott v. Belt Automobile Association, 87 Fla. 545, 100 So. 797; Aetna Casualty & Surety Co. v. Cartmel, 87 Fla. 495, 100 So. 802, 35 A. L. R. 1013. A contract of insur-· ance prepared by an insurance company will be construed liberally as against the insured and strictly as against the company. Martin v. Sun Insurance Office of London, 83 Fla. 325, 91 So. 363. Provisions of a policy limiting or avoiding liability are construed strictly against the insurer and liberally in favor of the insured. Palatine Insurance Co. v. Whitfield, 73 Fla. 716, 74 So. 869. Now since the policy did not require in terms that *semi-trailer* be def-

initely declared upon and rated in order that the truck tow-
ing the same be insured from the liabilities stated in the
policy, we hold, construing the terms of the policy most
strongly against the company, that the term *trailer* did
not include the term *semi-trailer,* but that failure to men-
tion *semi-trailer* in that part of the policy made it permis-
sible for a truck insured under that policy to tow a *semi-
trailer* and be insured though the *semi-trailer* was not def-
initely declared upon and rated. Therefore the truck in
question was insured at the time of the accident in question.

Now the distinction between a *trailer* and a *semi-trailer* is
not a technical or fanciful one without any basis in reason,
because they may each be put to different uses. A *trailer,*
which is a conveyance having four wheels, may be attached
to a truck by means of a coupling arm; and a load carried
in the *trailer* that is not related to the load carried in the
truck; and the truck can be disconnected from the *trailer*
and proceed with its load without disturbing the load on
the *trailer.* But a *semi-trailer,* of the type involved in this
case, is a two-wheeled conveyance, attached to the body of
the truck, and both the truck and the *semi-trailer* partici-
pate in carrying the same load. The truck could not be
disconnected from the *semi-trailer* without first unloading
the entire load carried jointly by both. Neither the truck
nor the *semi-trailer* alone could carry the load without the
aid of the other. Thus this type of *semi-trailer,* when en-
gaged in commercial hauling in this manner, is but an ex-
tension of the body of the truck, though recognized as a
*semi-trailer* for purposes of taxation, whereas a *trailer* is
a separate conveyance and is attached to the truck only by
the connecting or coupling arm.

Now even if the policy had provided that it was neces-
sary for any *semi-trailer* to be definitely declared upon and

rated when drawn by an insured truck, in order for the in-sured to be protected by the provisions of the policy, would not there have been a waiver of this provision by the insurance company, under the existing circumstances?

"In the absence of policy provision or statute to the contrary, any provision inserted in an automobile policy of insurance for the benefit of the insurer may be waived by it, even though such policy is statutory, as for instance, a provision for unconditional and sole ownership and against incumbrance; against change of ownership without written consent; against other insurance; or *against certain uses.*" (emphasis supplied) 13-14 Huddy Encyclopedia of Automobile Law 154, Sec. 138.

In the case of East Side Garage, Inc., v. New Brunswick Fire Insurance Co., 198 App. Div. 408, 190 N. Y. S. 634, the policy of automobile insurance contained a provision, which is similar to the provision contained in the policy in the instant case, as follows:

"No officer, agent or other representative of this company shall have power to waive any of the terms of this policy unless such waiver be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured unless so written or attached."

Yet the New York Court said in holding that there might be a waiver of this provision:

"Where automobile policy by its terms became null and void if the car was used for carrying passengers for hire, if the insurance company knew that its countersigning agents had assumed the power to orally consent that insured automobile might be used for transportation for hire pending consent or refusal by insurer itself, and that insured was relying on such consent, but did not repudiate its agents'

acts and did not cancel the policy or return the unearned premium but silently acquiesced in its agents' consent, knowing that insured was relying thereon, it was liable on the policy."

In 13-14 Huddy Encyclopedia of Automobile Law 155, Sec. 139, the following rule as to the sufficiency of knowledge on the part of the insurer, is found:

"Where insurer has knowledge of facts which would invalidate the contract from its inception, when it issues the policy, conditions inconsistent with such facts are waived and it is estopped from setting up breach of such conditions as a defense. Knowledge of agent of insurance company concerning subject of insurance which is acquired while procuring the application may be imputed to the company. The law is well settled that notice to the agent at the time of the application for insurance of facts material to the risk is notice to the insurer, and will prevent the insurer from insisting upon a forfeiture for cause within the knowledge of the agent. In some states, however, the knowledge of the agent as to an incumbrance is not imputed to the company."

Three states, Illinois, Indiana and Washington, are cited under the proposition that facts within the knowledge of the agent are deemed facts within the knowledge of the insurance company, while only one state, Alabama, is cited for authority to the contrary. The majority view, we believe to be the better view, and the one sustained by sound reasoning.

Mr. Goddard of the Gem City Builders' Supply Company testified in substance that C. E. O'Conner, the agent who wrote the policy of insurance for the garnishee insurance companies, had been familiar with the nature and character of the insured's business since it was begun, which

was six or seven years prior to the time of the trial; that when the insurance policy was written, O'Connor knew that the insured had three trucks, none of which had bodies, and each of which had a bolster on the rear, above the wheels; that O'Connor passed the insured's place of business several times daily, as he lived just a block from insured's place of business; that there was no way of hauling lumber of the average length on any of insured's trucks, except by attaching a *semi-trailer* to each truck chassis, the chassis of each truck being only about ten feet in length, while the average length of the lumber hauled was 16-18 feet. This testimony was not rebutted by the insurance company. Under these circumstances, and in view of the uncontradicted state of the testimony, the agent O'Connor may therefore be said to have had knowledge of the use of these *semi-trailers,* at the time of writing the policy of insurance. Such knowledge on the part of the agent was equivalent to knowledge on the part of the insurance company. By its failure to demand that premiums be paid for these *semi-trailers* when used in connection with insured's business and attached to an insured truck, the insurance company would have waived its right to declare a forfeiture of insurance on the truck towing the *semi-trailer,* and after the accident, the insurance company is estopped to deny that it is not liable on the policy of insurance.

For these reasons we think the Court erred in entering final judgment in favor of the garnishees. The judgment below should be and it is hereby reversed, and the cause remanded with directions that the Court enter a judgment in favor of plaintiff for the amount found to be due under the pleadings and proof.

It is so ordered.

ELLIS, C. J., and WHITFIELD, TERRELL, BUFORD and CHAPMAN, J. J., concur.

BROWN, J., concurs specially.

BROWN, J. (concurring specially).—I concur in the conclusion reached, and in all of the opinion except the paragraph regarding the waiver of the Company on account of the knowledge of the agent that the insured could not use his trucks for hauling lumber without attaching to them semi-trailers. I do not think this knowledge would change the express contract which the insured afterward accepted, unless the insurer also knew of it. However, this point is probably immaterial in view of the construction placed by the opinion on the contract as written.

## ON PETITION FOR REHEARING

PER CURIAM.—The policy of insurance, which is the contract between the insurer and the insured, controlling the rights of the parties, did not provide that the use of *semi-trailers* must be declared upon and rated in order that the truck towing the same be insured against the liabilities stated in the policy, and consequently it was not necessary to have this *semi-trailer* declared upon and rated. The original opinion so held, and we adhere to that holding now.

The policy contained this provision:

"Any person or his legal representative who shall *obtain final judgment against the assured* because of any such injury or destruction may proceed against the Company under the foregoing terms of this policy, to recover the amount of such judgment, either at law or in equity, but not exceeding the limit of this policy applicable thereto." (Emphasis supplied.)

The petition for rehearing suggests that this provision gave the injured party a separate action at law against the

insurer on the policy of insurance, and that garnishment would not lie. This contention is not sound. The quoted provision of the policy did not give the injured party a right to proceed directly against the insurer in the first instance, but gives the injured party the right to proceed against the insurer after the injured party has first obtained judgment against the insured. That is exactly what the injured party was doing by the institution of this garnishment proceeding. To further express the thought that the insurer could not be proceeded against by the injured party until after judgment had been secured against the insured, or the insured, insurer and injured party had agreed on the amount due, the following provision was also placed in the policy:

"No recovery against the Company shall be had until the amount of assured's obligation to pay shall have been finally determined either by judgment against the assured after actual trial or by written agreement of the assured, the claimant, and the Company, nor in either event unless suit is instituted within two years after the date of such judgment or written agreement."

There was a debt certain in amount, the judgment for $5,500.00, which the insured, the Gem City Builders' Supply Co., was obligated to pay the injured party, Samuel E. Poole, and against which liability the insured carried insurance evidenced by a policy of insurance issued by the defendant insurance companies to the insured. Therefore there was an obligation due from the insurer to the insured, to indemnify the latter from this liability, and garnishment was properly employed by the injured party.

The petition for rehearing states that the insurer did not defend the suit brought by the injured party against the insured in the lower court, because the insurer denied any

liability for this accident, on the ground that the truck, at the time of the accident was being put to a use in violation of the provisions of the policy, and that the insured agreed, at that time, with this denial of liability. (The original opinion of this Court in this case held that there was not a violation of the particular provision of the policy in question.) From that asserted premise, the petition for rehearing reasons that the insured, by taking that position then, is estopped to assert now that there is an indebtedness due from the insurer to the insured, and that since the insured is estopped to assert this liability, the injured party is also estopped to assert that there is any liability on the part of the insurer. Such reasoning is fallacious, because the one who is asserting the liability of the insurer, namely, the injured party, has never taken any position other than that of asserting the liability of the insurer. The insured cannot, by its conduct, bind the injured party so as to estop him from asserting the liability of the insurer for the accident in question, because the interests of the insured and of the injured party are necessarily adverse and antagonistic to each other. Estoppel could not be imputed from the insured to the injured party under these circumstances.

The judgment of this Court in the original opinion contemplates that the court below should enter judgment against the proper party or parties defendant, as shown by the record. In so far as is shown by this record, it appears that the liability for the payment of this judgment is upon the Travelers Insurance Co.

Rehearing denied.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD, and CHAPMAN, J. J., concur.