CIKLIN, C.J.
In this insurance coverage dispute, Old Dominion Insurance Company (“Old Dominion”) appeals the final summary judgment entered in favor of the plaintiffs be *294 low, Richard Maclean, Global Education Services (collectively, “Plaintiffs”), and the actual insured, Stellar Concepts and Design, Inc. (“Stellar”). Because Stellar was sued by the Plaintiffs, Stellar sought insurance coverage from Old Dominion. Old Dominion contends the trial court erred in determining that the subject insurance policy covered damages arising from automated solicitation calls placed by Stellar to the Plaintiffs, in violation of Washington state law. We affirm, finding that Old Dominion had a responsibility to defend its insured in the suit brought against Stellar by the Plaintiffs.
The underlying lawsuit arose from a previously-settled class action lawsuit in the state of Washington. In that litigation, the Plaintiffs alleged that they were the recipients of phone calls with a prerecorded message- soliciting the Plaintiffs to: use Stellar for their business needs. The Plaintiffs alleged that the calls were in violation of the Washington Consumer Protection Act and the basis of the Plaintiffs’ damages was found to be loss of use of their telephones because of being inundated with Stellar’s robotic telephone solicitations. The Washington litigation resulted in a settlement and judgment in favor of the Plaintiffs.
At all times relevant, Stellar was insured under a general liability insurance policy and an umbrella policy issued by Old Dominion. In pertinent part, the general liability policy provides that Old Dominion “will pay those sums that the insured becomes legally obligated to pay as damages because of ‘bodily injury’ or ‘property damage’” that is caused by an “occurrence.”
Following the judgment in the Washington litigation, Old Dominion filed the underlying action, seeking a declaratory judgment that it had no duty to indemnify or defend Stellar for the claims in the Washington litigation. The- parties each moved for summary judgment. The trial court determined that coverage existed under the policy and entered judgment in favor of the Plaintiffs in their suit against Stellar.
On appeal, Old Dominion argues that there was no “occurrence” to trigger coverage under the policy. Alternatively, it contends that, if there was an occurrence, then the “expected or intended injury” exclusion applies because the calls were placed intentionally, not accidentally, and Stellar knew the calls would necessarily result in loss of use of the phone lines.
The Plaintiffs argue that the calls qualify as an “occurrence” because the undisputed evidence showed that Stellar lacked specific intent' to cause harm to a third party. They further argue that the trial court correctly found that the expected or intended injury exclusion does not apply because, while the calls were intentionally placed, the damages were not intentionally caused.
Under the subject policy, “ ‘[ojccurrence’ means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” “Accident” is not defined.
In making its determination that the calls were an “occurrence,” the trial court relied on State Farm Fire & Casualty Co. v. CTC Development Corp., 720 So.2d 1072 (Fla.1998). CTC explains:
[Wjhere policy language is subject to differing interpretations, the term should be construed liberally in favor of the insured and strictly against the insurer. Container Corp. [of America v. Maryland Cas. Co., 707 So.2d 733, 736 (Fla.1998)]; Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830 (Fla.1997). In addition, “when an insurer fails to define a term in a policy, ... the insurer *295 cannot take the position that there should be a ‘narrow, restrictive interpretation of the coverage provided.’ ” State Comprehensive Health Ass’n v. Carmichael, 706 So.2d 319, 320 (Fla. 4th DCA 1997)[.]
Id. at 1076 (second alteration in original).
“[W]hen the term ‘accident’ is undefined in a liability policy,' the term includes not only ‘accidental events,’ but also damages or injuries that are neither expected nor intended from the viewpoint' of the insured.” Id. at 1072. In so holding, the Florida Supreme Court further explained:
Although exclusionary clauses cannot be relied upon to create coverage, principles governing the construction of insurance contracts dictate that when construing an insurance policy to determine coverage the pertinent provisions should be read in pari materia. Reading the coverage provision of the policy together with the exclusionary clause could support a. conclusion that coverage is provided in the State Farm policy for occurrences where the insured did not intend or expect to cause harm to the third party.
Id. at 1074-76 (Fla.1998) (alterations and internal citations omitted).
Other cases have similarly found an “accident” to include circumstances where unintended damages result from the insured’s intentional acts. See, e.g., FCCI Ins. Co. v. Horne, 890 So.2d 1141, 1144 (Fla. 5th DCA 2004) (finding coverage of “accident” in absence of allegation of intent to harm, even where conduct was substantially certain to result in injury, and noting “that liability policies covering ‘accidents’ apply to injury or damage caused by the insured’s intentional acts so long as the insured did not intend to came any harm” (emphasis in original)); McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass’n, 758 So.2d 692, 694 (Fla. 4th DCA 1999) (finding that despite insured’s intentional act of allowing dogs to roam through neighborhood, act alleged was still an “occurrence” because resulting damage to neighbors was unintended).
The policy at issue in CTC contained very similar language to that in the instant policy; it covered accidents, but lacked a definition for the word “accident,” and included an exclusionary clause for damage “expected or intended from the standpoint of the insured.” See CTC, 720 So.2d at 1073-74. There, a builder built a home in violation 'of restrictive covenants requiring a fifteen-foot setback from each side lot line. Id. at 1073. The builder admitted that he built the home with knowledge that it was beyond the setbacks; but asserted that he was under .the impression that a variance had been granted for the construction. Id. The court concluded, “[T]he fact that he intentionally constructed the house knowing that it was outside of the setback line does not preclude a finding of coverage under his liability policy for this ‘occurrence.’ ” Id. at 1076.
Similarly, here, despite the completion of pre-trial discovery, there was no evidence to suggest that Stellar intended to cause an injury. The deposition testimony of Anthony Guidice, Stellar’s former owner, revealed that he believed he had the right to contact .businesses and, he had a good faith belief that the automated calls were lawful. Guidice testified that he had been directed to “a website to a federal law that stated that it was legal.” Stellar admitted that it made the calls in question, and those calls necessarily resulted in a loss of .use of the Plaintiffs’ phone lines while the calls were being placed. However, the evidence demonstrated that Stellar was not aware that it was acting in violation of a state law. Old Dominion does not *296 point to any evidence disputing Stellar’s lack of intent to injure.
Because Stellar did not intend to cause an injury or break Washington state law by placing the phone calls, the trial court did not err in determining that the calls constituted an “occurrence” under the policy-
We further conclude that the expected or intended injury exclusion does not apply. The exclusion provides:
This insurance does not apply to:
a. Expected or Intended Injury “Bodily injury” or “property damage” expected or intended from the standpoint of the insured.
The trial court relied on Prudential Property & Casualty Insurance Co. v. Swindal, 622 So.2d 467 (Fla.1993), in determining that the expected or intended injury exclusion did not apply:
Florida law has long followed the general rule that tort law principles do not control judicial construction of insurance contracts. Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties. Ambiguities are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy. Gulf Life Ins. Co. v. Nash, 97 So.2d 4, 9-10 (Fla.1957); see also, e.g., Stuyvesant Ins. Co. v. Butler, 314 So.2d 567, 570 (Fla.1975); Poole v. Travelers Ins. Co., 130 Fla. 806, 814, 179 So. 138, 141 (1937). Thus, intentional act exclusions are limited to the express terms of the policies and do not exclude coverage for injuries more broadly deemed under tort law principles to be consequences flowing from the insured’s intentional acts.
Id. at 470. The Swindal court reaffirmed its earlier holding in Nash and explained that “injury or damage is caused intentionally within the meaning of an intentional injury exclusion clause if the insured has acted with the specific intent to cause harm to a third party.” Swindal, 622 So.2d at 471 (quoting Cloud v. Shelby Mut. Ins. Co. of Shelby, Ohio, 248 So.2d 217, 218 (Fla. 3d DCA1971)).
Here, when read in pari materia with the “occurrence” provision, the policy language supports a conclusion that coverage is provided where the insured did not expect or intend to cause harm. See CTC, 720 So.2d at 1075. The damages at issue, loss of use of the phone lines, were consequences flowing from Stellar’s intentional acts of placing the phone calls. Plaintiffs brought forth evidence demonstrating that Stellar did not intend to harm the Plaintiffs by placing the phone calls, but rather it believed it was in compliance with federal laws. Because the loss of use of the phone lines was not an intentional injury, the expected or intended injury exclusion does not apply.
Because the trial court' properly found that the incident at issue is covered under Coverage A of the policy, it is unnecessary to address Old Dominion’s remaining two arguments, as they pertain to Coverage B.

Affirmed.

WARNER and KLINGENSMITH, JJ., concur.